**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

Case No. **4:16-cv-1248**

**Kenneth L. Allen, Jr.**

and

**Jan Allen,**

and

**Meramec Recovery Center, Inc.**

and

Plaintiffs,

─────── *vs.* ───────

Jason Grellner,                                George Lombardi,

Franklin County, Missouri,                        Carey Curran,

Bridgeway Behavioral Health                    Sherri Huxol,
Foundation Board, Inc.,
                                                      and
Jennifer King,                                Jennifer Bartlett

Defendants.

─────────────
**COMPLAINT**
─────────────

**COME NOW** Plaintiffs, and for their cause of action state as follows:

**A. Parties.**

1. Plaintiff Kenneth L. Allen, Jr., is a natural person who is a citizen of the state of Missouri residing in Franklin County, and who is a director and officer of Plaintiff Mera-

mec.

2. Plaintiff Jan Allen is a natural person who is a citizen of the state of Missouri residing in Franklin County, and who is a director and officer of Plaintiff Meramec.

3. Plaintiff Meramec Recovery Center, Inc., is a general business corporation organized and existing under Missouri law which from 2000 to 2013 served as the treatment provider for the Franklin County Drug Court, a treatment court authorized by Mo. Rev. Stat. § 478.001 and established by the Franklin County Circuit Court in 2000.

4. Plaintiffs Kenneth Allen and Jan Allen are huband-and-wife who also own rental premises in Franklin County, which at all relevant times they had leased to Franklin County Community Services Acquisition, Inc., d/b/a Advanced Treatment and Recovery, on May 2, 2014, for a two-year, triple-net-lease term at a monthly rental rate of $1,500.00.

5. Defendant Jason Grellner was at all relevant times a Missouri law enforcement officer who was an employee, agent, servant, and/or representative of Defendant Franklin County who served as a law enforcement representative for the Drug Court. At all relevant times, Defendant Grellner acted under color of law, and he is sued herein in his individual and official capacities to the fullest extent permitted by law.

6. At all relevant times, Defendant Franklin County was a division of the state of Missouri, duly organized under Missouri law. At all relevant times, Defendant Franklin County,

— 2 —

by its employees, agents, and representatives, acted under color of law.

7. Defendant Bridgeway Behavioral Health Foundation Board, Inc., is a general business corporation organized and existing under Missouri law which served as the treatment provider for the Franklin County DWI Court, a treatment court authorized by Mo. Rev. Stat. § 478.001 and established by the Franklin County Circuit Court in 2000 at the same time it established the Drug Court.

8. Jennifer King is a natural person who is, upon information and belief, a citizen of the state of Missouri, and who at all relevant times was an employee, agent, servant, and/or representative of Defendant Bridgeway.

9. George Lombardi is a natural person who is, upon information and belief, a citizen of the state of Missouri, and who at all relevant times was Director of the Missouri Department of Corrections.

10. Carey Curran is a natural person who is, upon information and belief, a citizen of the state of Missouri, and who at all relevant times was a probation/parole officer for the Missouri Department of Corrections who served as a probation case manager for Drug Court. At all relevant times, Defendant Curran acted under color of law, and he is sued herein in his individual and official capacities to the fullest extent permitted by law.

11. Sherri Huxol is a natural person who is, upon infor-

— 3 —

mation and belief, a citizen of the state of Missouri, and who at all relevant times was a probation/parole officer for the Missouri Department of Corrections who served as a probation case manager for Drug Court. At all relevant times, Defendant Huxol acted under color of law, and she is sued herein in her individual and official capacities to the fullest extent permitted by law.

12. Jennifer Bartlett is a natural person who is, upon information and belief, a citizen of the state of Missouri, and who at all relevant times was an assistant prosecuting attorney for Defendant Franklin County and who served as the assisant prosecuting attorney assigned to Drug Court. At all relevant times, Defendant Bartlett acted under color of law, and she is sued herein in her individual and official capacities to the fullest extent permitted by law.

**B. Facts Giving Rise to Cause of Action.**

13. In the year 2000, Plaintiff Meramec entered into a written agreement with the Missouri State Courts Administrator ("OSCA") to become a treatment provider for participants in Drug Court and which implemented the directives of Drug Court regarding counseling and other relevant services for its participants, who faced criminal charges related to the illegal use, and/or possession, and/or distribution of controlled substances.

14. Each such written contract was for one-year periods.

15. The final such contract was entered into between

— 4 —

Plaintiff Meramec and OSCA on or about May 7, 2013, for a one-year period beginning July 1, 2013, and ending June 30, 2014.

16. The contract provided that OSCA could terminate the contract prior to its expiration only for cause; i.e., only if Meramec's services were deemed unsatisfactory or failed to meet the goals and objectives of Drug Court.

17. Each such contract was silent as to who determined whether Meramec's services were unsatisfactory or failed to meet the goals and objectives of Drug Court.

18. Since the year 2002, Drug Court has been presided over and supervised by Judge Stanley W. Williams, an elected associate circuit judge stationed primarily in Franklin County.

19. Pursuant to § 478.001.1 and Drug Court's practice, Judge Williams was the lone decision-maker regarding whether Meramec's services were deemed unsatisfactory or failed to meet the goals and objectives of Drug Court.

20. At all relevant times, including up to the date the 2013-2014 contract was terminated by OSCA prior to its expiration as stated *infra*, Judge Williams had deemed Meramec's services to be satisfactory and had met the goals and objectives of Drug Court.

21. At various times prior to the contract's termination, Defendant Grellner caused many Drug Court participants to agree to serve as confidential informants for him so that he could make drug-related arrests he otherwise would not have been able to make without using other, less convenient means.

22. Upon information and belief, the primary motivating factor for Defendant Grellner's conduct in this regard was the prospect of being able to proclaim to the public that he was successful in ridding Franklin County of drug-related crimes for the purpose of getting elected to the office of Sheriff in the 2016 election year.

23. Defendant Grellner succeeded in causing those Drug Court participants to agree to act as confidential informants by threatening to cause them to be eliminated from Drug Court and to be exposed to all of the consequences associated with criminal conviction which Drug Court was designed to allow them to avoid, after which threats and consideration thereof the participants agreed to act as confidential informants.

24. As the law enforcement representative assigned to Drug Court, Defendant Grellner was powerfully-positioned to succeed in getting Drug Court participants to agree to act as confidential informants because he had a say in the progress of each participant, and could thereby influence Judge Williams' decisions whether to eliminate the participants from Drug Court.

25. The effect of Defendant Grellner's conduct was to cause a significant decrease in the success of Drug Court participants because those who had been caused by Defendant Grellner to act as confidential informants would be forced to associate with other drug users/distributors, which led them to revert to the habits which led to their arrests and place-

— 6 —

ment in Drug Court in the first instance.

26. Shortly after Defendant Grellner began causing Drug
Court participants to choose between rehabilitation and acting
as confidential informants for him, Plaintiff Kenneth Allen
noticed that those participants began failing drug testing,
missing counseling sessions, missing Drug Court dates, and
generally failed to meet the Drug Court objectives of rehabil-
itation and reduced recidivism.

27. Plaintiff Kenneth Allen then learned that the reason
for the Drug Court participants' failures were because of
Defendant Grellner's conduct in causing them to act as confi-
dential informants.

28. Plaintiff Kenneth Allen confronted Defendant Grellner
with his knowledge of Defendant Grellner's conduct and direct-
ed him to cease and desist because such conduct directly
ensured that Drug Court participants became less likely to
benefit from the objectives of Drug Court.

29. Instead of ceasing and desisting, Defendant Grellner
increased his efforts to get Drug Court participants to act as
confidential informants, and he also began spreading false
rumors about Plaintiffs Meramec and Kenneth Allen to Defen-
dants Bartlett, King, Curran, and Huxol so that they would
join him in his discrediting Plaintiffs Meramec and Kenneth
Allen in the eyes of OSCA for the purpose of causing OSCA to
terminate the contract with Plaintiff Meramec.

30. Upon information and belief, Defenant Grellner stood

— 7 —

to financially profit from Bridgeway should he succeed in causing Plaintiff Meramec to lose its contract.

31. Upon information and belief, Defendants Grellner, Bartlett, King, Curran, and Huxol believed that they had the power to determine who/what would fulfill the role of Drug Court treatment provider.

32. Upon information and belief, Defendants Grellner and Bartlett met with OSCA for the purpose of convincing OSCA to terminate the contract it had with Plaintiff Meramec.

33. Upon information and belief, Defendants Grellner, Bartlett, King, Curran, and Huxol —— collectively and/or individually —— further communicated false rumors to OSCA, which upon further information and belief officials at OSCA believed to be true.

34. On August 26, 2013, OSCA gave written notice to Plaintiffs Meramec and Kenneth Allen that it had terminated the contract between Plaintiff Meramec and OSCA, and that the termination would be effective on September 26, 2013.

35. On September 11, 2013, OSCA's legal counsel advised Plaintiffs Meramec and Kenneth Allen, in writing, that

> OSCA may terminate any agreements they may have, if the service is deemed to be unsatisfactory or fails to meet the goals and objectives of the treatment court.
>
> Cause is not needed to terminate under this section.

36. Thereafter, OSCA awarded the contract to another treatment provider.

— 8 —

37. Upon information and belief, Defendant Grellner continues to force Drug Court participants to act as confidential informants, all with the assent of Defendants Bridgeway, King, Curran, and Huxol.

38. Also upon information and belief, Defendant Grellner has forced Drug Court participants to act as campaign aides in his election bid for Sheriff of Franklin County under threat of elimination from Drug Court, also with the assent of Defendants Bridgeway, King, Curran, and Huxol.

39. Further upon information and belief, Defendants Grellner, Bartlett, King, Curran, and Huxol caused Advanced Treatment and Recovery to terminate its lease with Plaintiffs Kenneth Allen and Jan Allen by spreading false rumors about Plaintiff Meramec.

40. As a direct, proximate result of Defendants' conduct, Plaintiffs have been damaged.

———————————————————

**C. Claims for Relief.**

### COUNT I — VIOLATIONS OF PLAINTIFF MERAMEC'S CONSTITUTIONAL PROPERTY RIGHTS UNDER 42 U.S.C. § 1983

(Defendants Grellner, Bartlett, King, Curran, and Huxol)

41. Plaintiffs incorporate in this Count the allegations of the foregoing facts as if fully set forth herein.

42. Plaintiff Meramec and OSCA, as Missouri State Courts Administrator, had a valid, enforceable contract in effect from July 1, 2013, to June 30, 2014.

— 9 —

43. Plaintiff Meramec had a vested property right to act as Drug Court treatment provider from July 1, 2013, to June 30, 2014, by way of the contract because it could be terminated prior to its expiration only should Judge Williams determine that Meramec's services were deemed unsatisfactory or failed to meet the goals and objectives of Drug Court.

44. Judge Williams had never determined that Meramec's services were deemed unsatisfactory or failed to meet the goals and objectives of Drug Court.

45. Defendants Grellner, Bartlett, King, Curran, and Huxol were aware of the contract between Plaintiff Meramec and OSCA.

46. Defendants Grellner, Bartlett, King, Curran, and Huxol, individually and/or collectively, induced OSCA to terminate Plaintiff Meramec's contract prior to its expiration by causing OSCA to believe that Plaintiff Meramec was unfit to serve as Drug Court treatment provider.

47. As a direct and proximate result thereof, OSCA breached the contract by terminating it prior to its expiration without the cause required therefor by the contract.

48. Each said defendant acted under color of law.

49. As a direct and proximate result of said defendants' conduct, Plaintiff Meramec lost its vested property right in its contract, and said plaintiff has thereby been damaged.

50. Each of said defendant's conduct was reckless and outrageous, and subjected Plaintiff Meramec to an unreasonable loss of its property right in its contract; therefore, they

should be ordered to pay a just amount in punitive damages.

51. Based on the foregoing, Plaintiff Meramec is entitled to a recovery of reasonable attorney fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff Meramec prays for the following relief:

A. Actual damages in a fair and reasonable amount, plus interest on said sum at a rate of nine percent per annum on or from the date of Plaintiff Meramec's injuries; or, alternatively, from the date this complaint is filed;

B. Punitive damages in such amount as will properly punish said defendants and make an example of them;

C. Plaintiff Meramec's costs and reasonable attorney fees; and

D. Any other relief consistent with substantial justice.

────────────────────

**COUNT II — VIOLATIONS OF CONSTITUTIONAL PROPERTY RIGHTS OF PLAINTIFFS KENNETH ALLEN AND JAN ALLEN UNDER 42 U.S.C. § 1983**

(Defendants Grellner, Bartlett, King, Curran, and Huxol)

52. Plaintiffs incorporate in this Count the allegations of the foregoing facts as if fully set forth herein.

53. Plaintiffs Kenneth Allen and Jan Allen had a valid, enforceable contract with Advanced Treatment and Recovery.

54. Plaintiffs Allen had a vested property right in said contract, of which Defendants Grellner, Bartlett, King, Curran, and Huxol were aware.

— 11 —

55. Defendants Grellner, Bartlett, King, Curran, and Huxol, individually and/or collectively, induced Advanced Treatment and Recovery to terminate its contract with Plaintiffs Allen prior to its expiration by causing Advanced to believe that it should not lease the premises owned by Plaintiffs Allen, who were the directors and officers of Plaintiff Meramec.

56. As a direct and proximate result thereof, Advanced terminated the parties' contract prior to expiration without the cause required therefor by the contract.

57. Each said defendant acted under color of law.

58. As a direct and proximate result of said defendants' conduct, Plaintiffs Kenneth Allen and Jan Allen lost their vested property right in their contract with Advanced Treatment and Recovery, and said plaintiffs have thereby been damaged.

59. Each said defendant's conduct was reckless and outrageous, and subjected Plaintiffs Allen to an unreasonable loss of their property right in the contract; therefore, they should be ordered to pay a just amount in punitive damages.

60. Based on the foregoing, Plaintiffs Allen are entitled to a recovery of reasonable attorney fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiffs Kenneth Allen and Jan Allen pray for the following relief:

A. Actual damages in a fair and reasonable amount, plus

interest on said sum at a rate of nine percent per annum on or from the date of said plaintiffs' injuries; or, alternatively, from the date this complaint is filed;

B. Punitive damages in such amount as will properly punish said defendants and make an example of them;

C. Plaintiffs Allen's costs and reasonable attorney fees; and

D. Any other relief consistent with substantial justice.

───────────────────────────

## COUNT III — CIVIL CONSPIRACY TO VIOLATE PLAINTIFFS' CONSTITU-TIONAL PROPERTY RIGHTS UNDER 42 U.S.C. § 1983

(Defendants Grellner, Bartlett, King, Curran, and Huxol)

61. Plaintiffs incorporate in this Count the allegations of the foregoing facts as if fully set forth herein.

62. Plaintiff Meramec and OSCA had a valid, enforceable contract in effect from July 1, 2013, to June 30, 2014.

63. Defendants Grellner, Bartlett, King, Curran, and Huxol were aware of the contract between Plaintiff Meramec and OSCA.

64. Defendants Grellner, Bartlett, King, Curran, and Huxol, formed an agreement or understanding between them that they, or either one or more of them, would intentionally interfere with the contractual relationship between Plaintiff Meramec and OSCA by inducing OSCA to terminate the contract with Plaintiff Meramec.

65. Relying on that agreement or understanding between them, said defendants, or either one or more of them, in fact

— 13 —

intentionally interfered with the contractual relationship between Plaintiff Meramec and OSCA by inducing OSCA to terminate the contract with Plaintiff Meramec.

66. Each said defendant acted under color of law.

67. As a direct and proximate result of said defendants' conduct, Plaintiff Meramec lost its vested property right in its contract with OSCA, and said plaintiff has thereby been damaged.

68. Each said defendant's conduct was reckless and outrageous, and subjected Plaintiff Meramec to an unreasonable loss of its property right in its contract; therefore, they should be ordered to pay a just amount in punitive damages.

69. Based on the foregoing, Plaintiff Meramec is entitled to a recovery of reasonable attorney fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff Meramec prays for the following relief:

A. Actual damages in a fair and reasonable amount, plus interest on said sum at a rate of nine percent per annum on or from the date of Plaintiff Meramec's injuries; or, alternatively, from the date this complaint is filed;

B. Punitive damages in such amount as will properly punish said defendants and make an example of them;

C. Plaintiff Meramec's costs and reasonable attorney fees; and

D. Any other relief consistent with substantial justice.

---

## COUNT IV — CIVIL CONSPIRACY TO VIOLATE PLAINTIFFS' CONSTITU-TIONAL PROPERTY RIGHTS UNDER 42 U.S.C. § 1983

(Defendants Grellner, Bartlett, King, Curran, and Huxol)

70. Plaintiffs incorporate in this Count the allegations of the foregoing facts as if fully set forth herein.

71. Plaintiffs Kenneth Allen and Jan Allen had a valid, enforceable contract in effect from May 2, 2014, to May 1, 2016, with Advanced Treatment and Recovery.

72. Defendants Grellner, Bartlett, King, Curran, and Huxol were aware of the contract between Plaintiffs Allen and Advanced.

73. Defendants Grellner, Bartlett, King, Curran, and Huxol formed an agreement or understanding between them that they, or either one or more of them, would intentionally interfere with the contractual relationship between Plaintiffs Allen and Advanced by inducing Advanced to terminate the contract with Plaintiffs Allen.

74. Relying on that agreement or understanding between them, said defendants, or either one or more of them, in fact intentionally interfered with the contractual relationship between Plaintiffs Allen and Advanced by inducing Advanced to terminate the contract with Plaintiffs Allen.

75. Each said defendant acted under color of law.

76. As a direct and proximate result of said defendants' conduct, Plaintiffs Allen lost their vested property right in

— 15 —

their contract with Advanced, and said plaintiffs have thereby been damaged.

77. Each said defendant's conduct was reckless and outrageous, and subjected Plaintiffs Allen to an unreasonable loss of their property right in their contract; therefore, they should be ordered to pay a just amount in punitive damages.

78. Based on the foregoing, Plaintiffs Allen are entitled to a recovery of reasonable attorney fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs Allen pray for the following relief:

A. Actual damages in a fair and reasonable amount, plus interest on said sum at a rate of nine percent per annum on or from the date of said plaintiffs' injuries; or, alternatively, from the date this complaint is filed;

B. Punitive damages in such amount as will properly punish said defendants and make an example of them;

C. Plaintiffs Allen's costs and reasonable attorney fees; and

D. Any other relief consistent with substantial justice.

─────────────────────

**COUNT V — VIOLATIONS OF PLAINTIFFS' CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983 FOR FAILURE TO TRAIN**

(Defendants Franklin County and Lombardi)

79. Plaintiffs incorporate in this Count the allegations of the foregoing facts as if fully set forth herein.

80. Defendants Franklin County and Lombardi had duties to

— 16 —

train their subordinates so that Drug Court had the optimal chance for success, and so that they would not violate the constitutional rights of the citizenry.

81. Defendant Grellner was a subordinate of Defendant Franklin County who ensured that Drug Court lost an optimal chance for success by exploiting the vulnerability of Drug Court participants in order to force them to act as confidential informants such that Drug Court was likely to fail for those participants; and who violated Plaintiffs' constitutional rights by causing them to lose valuable property rights in contracts.

82. Defendants Curran and Huxol were subordinates of Defendant Lombardi who ensured that Drug Court lost an optimal chance for success by assenting to, and failing to prevent Defendant Grellner from exploiting the vulnerability of Drug Court participants in order to force them to act as confidential informants such that Drug Court was likely to fail for those participants; and who violated Plaintiffs' constitutional rights by causing them to lose valuable property rights in contracts.

83. The failures of Defendants Franklin County and Lombardi to adequately train said defendants resulted in the unconstitutional loss of Plaintiffs' property rights.

84. Defendants Franklin County and Lombardi acted under color of law.

85. As a direct and proximate result of said defendants'

conduct, Plaintiffs lost their vested property rights their contracts, and Plaintiffs have thereby been damaged.

86. Based on the foregoing, Plaintiffs are entitled to a recovery of reasonable attorney fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiffs prays for the following relief:

A. Actual damages in a fair and reasonable amount, plus interest on said sum at a rate of nine percent per annum on or from the date of Plaintiffs' injuries; or, alternatively, from the date this complaint is filed;

B. Plaintiffs' costs and reasonable attorney fees; and

C. Any other relief consistent with substantial justice.

---

### COUNT VI — TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATION-SHIPS UNDER MISSOURI LAW

(Defendants Grellner, Bartlett, Bridgeway, King, Curran, and Huxol)

87. Plaintiffs incorporate in this Count the allegations of the foregoing facts as if fully set forth herein.

88. Plaintiff Meramec and OSCA, acting as Missouri State Courts Administrator, had a valid, enforceable contract in effect from July 1, 2013, to June 30, 2014.

89. Plaintiffs Kenneth Allen and Jan Allen had a valid, enforceable contract with Advanced Treatment and Recovery.

90. Defendants Grellner, Bartlett, Bridgeway, King, Curran, and Huxol were aware of Plaintiffs' said contracts. Bridgeway was aware by virtue of being Defendant King's em-

— 18 —

ployer.

91. Defendants Grellner, Bartlett, King, Curran, and Huxol, individually and/or collectively, induced OSCA to terminate Plaintiff Meramec's contract prior to its expiration, and induced Advanced Treatment and Recovery to terminate its contract with Plaintiffs Allen prior to its expiration.

92. As a direct and proximate result thereof, OSCA breached the contract by terminating it prior to its expiration without the cause required therefor by the contract; and Advanced terminated its contract with Plaintiffs Allen prior to its expiration without the cause required therefor by the contract.

93. As a direct and proximate result of said defendants' conduct, Plaintiffs have been damaged.

94. Each said defendant's conduct was reckless and outrageous, and subjected Plaintiffs to an unreasonable loss of their property rights in their contracts and to be damaged; therefore, they should be ordered to pay a just amount in punitive damages.

**WHEREFORE**, Plaintiffs pray for the following relief:

A. Actual damages in a fair and reasonable amount, plus interest on said sum at a rate of nine percent per annum on or from the date of Plaintiffs' injuries; or, alternatively, from the date this complaint is filed;

B. Punitive damages in such amount as will properly punish said defendants and make an example of them;

— 19 —

C. All costs of this action; and

D. Any other relief consistent with substantial justice.

_____

**COUNT VII — CIVIL CONSPIRACY TO TORTIOUSLY INTERFERE WITH
CONTRACTUAL RELATIONSHIPS UNDER MISSOURI LAW**

(Defendants Grellner, Bartlett, Bridgeway, King, Curran, and
Huxol)

95. Plaintiffs incorporate in this Count the allegations of the foregoing facts as if fully set forth herein.

96. Plaintiff Meramec and OSCA, acting as Missouri State Courts Administator, had a valid, enforceable contract in effect from July 1, 2013, to June 30, 2014.

97. Plaintiffs Kenneth Allen and Jan Allen had a valid, enforceable contract with Advanced Treatment and Recovery.

98. Defendants Grellner, Bartlett, Bridgeway, King, Curran, and Huxol were aware of Plaintiffs' said contracts. Bridgeway was aware by virtue of being Defendant King's employer.

99. Defendants Grellner, Bartlett, Bridgeway, King, Curran, and Huxol, formed an agreement or understanding between them that they, or either one or more of them, would intentionally interfere with the foregoing contractual relationship Plaintiffs had in order to cause them to lose their property rights therein.

100. Relying on that agreement or understanding between them, said defendants, or either one or more of them, in fact intentionally interfered with said contractual relationships

— 20 —

Plaintiffs had by inducing the other parties thereto to breach the contracts by terminating them prior to expiration without the requisite cause.

101. As a direct and proximate result of said defendants' conduct, Plaintiffs lost their vested property rights in their said contracts, and Plaintiffs have thereby been damaged.

102. Each said defendant's conduct was reckless and outrageous, and subjected Plaintiffs Meramec to an unreasonable loss of their property rights in their contracts; therefore, they should be ordered to pay a just amount in punitive damages.

**WHEREFORE,** Plaintiffs pray for the following relief:

A. Actual damages in a fair and reasonable amount, plus interest on said sum at a rate of nine percent per annum on or from the date of Plaintiffs' injuries; or, alternatively, from the date this complaint is filed;

B. Punitive damages in such amount as will properly punish said defendants and make an example of them;

C. All costs of this action; and

D. Any other relief consistent with substantial justice.

────────────────────────

### DEMAND FOR JURY TRIAL

103. Plaintiffs demand a trial by jury.

Respectfully submitted,

**HANRAHAN & NACY, P.C.**

by:  */s/ William P. Nacy*
_____
WILLIAM P. NACY, MBE #52576
522 E. Capitol Ave.
Jefferson City, MO  65101
Telephone (573) 636-7900
Telefacsimile (573) 556-6340

*Attorneys for Plaintiffs*